UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number:  10-61299-CIV-MARTINEZ-MCALILEY**

CYNTHIA BAGNALL and FORREST
GREGORY BAGNALL,

      Plaintiffs,

vs.

CITY OF SUNRISE, FLORIDA,

      Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendant City of Sunrise's Motion for Summary Judgment (D.E. No. 38).  Plaintiffs Forrest Gregory Bagnall and Cynthia Bagnall (collectively "Plaintiffs" individually "Mr. Bagnall" and "Mrs. Bagnall" respectively) have filed suit against Defendants the City of Sunrise, Florida ("Defendant" or "the City"), alleging violations of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301, *et seq*. ("USERRA").  After careful consideration and for the reasons set forth below, the Court grants in part and denies in part Defendant's motion.

### I.     Relevant Factual and Procedural Background

### A.     Mr. Bagnall

Mr. Bagnall joined the military in 1984 and has been a commissioned officer in the

United States Army Reserve since 1987. (Mr. Bagnall's Depo. at 19);[1] (D.E. No. 63, Joint Pretrial

_____

[1]Both Plaintiffs and Defendant have submitted copies of Mr. Bagnall's deposition.  See (D.E. Nos. 40-1, 40-2, 40-3, 40-4, and 49-9).

Stipulation at ¶ 5(a)).  Mr. Bagnall began working for Defendant the City on August 22, 1988 as

a utility operator.  (Mr. Bagnall's Depo. at 19); (D.E. No. 63, Joint Pretrial Stip. at ¶ 5(b)). Mr.

Bagnall held several different positions with the City, but in 1995, he became a Project

Engineer/Fleet Manager in the Planning and Development Department.  (Mr. Bagnall's Depo. at

23-24).  This was the position he held in 2003 when he went on active military duty.  (Mr.

Bagnall's Depo. at 76); (D.E. No. 40-12, Def. Exh. 3 at 4); (D.E. No. 63, Joint Pretrial Stip. at ¶

5(c)).  On Mr. Bagnall's last day of full-time employment before he went on active duty, Mr.

Bagnall's position of Project Engineer/Fleet Manager was in pay grade steps 49 through 62.

(D.E. No. 40-12, Exh. 3 at 4).  In actuality, Mr. Bagnall was placed in pay grade step 63 because

he was awarded an extra step based on his length of service.  *Id*. at 5.  Right before he left for

active duty, Mr. Bagnall's salary was $64,689.25.  *Id*.

      Mr. Bagnall went on active military duty with the Office of Chief Engineers beginning on

August 10, 2003.  (Mr. Bagnall's Depo. at 76); (D.E. No. 63, Joint Pretrial Stip at ¶ 5(c)).

Thereafter, Mr. Bagnall remained an employee of the City but was on extended military leave.

(Mr. Bagnall's Depo. at 76).  While he was on extended military leave, Mr. Bagnall received a

number of benefits from the City, including that he continued to accrue annual leave and sick

leave, that he was able to use some of this leave to make contributions to his City pension, he

received insurance, and he was awarded cost of living increases and an additional pay grade step

for his length of service with the City.[2]  (Mr. Bagnall's Depo. at 76-78, 79-80); (D.E. No. 40-12,

Exh. 3 at 5).  It is, however, undisputed that certain payments were not made into Mr. Bagnall's

---

    [2]This placed Mr. Bagnall at pay grade step 64, and in June 2008 Mr. Bagnall's salary was
$79,131.10.  (D.E. No. 40-12, Def. Exh. 3 at 5).

-2-

401(a) account.  (D.E. No. 39 at ¶¶ 22, 23); (Mr. Bagnall's Depo. at 69-70); (D.E. No. 40-18, Def. Exh. 9); (D.E. No. 49-3, Pl. Exh. 9).

 In a letter dated April 16, 2008 to Personal Director Robert Fischer ("Fischer"), Mr. Bagnall informed the City that on May 4, 2008 his term of active duty would be complete and that he was applying for reemployment and requested to meet with Fischer before his return. (D.E. No. 40-5, Def. Exh. 17); (D.E. No. 49-7, Pl. Exh. 6).  Mr. Bagnall states in this letter that he wanted to discuss with Fischer his "qualifications, the job vacancies that are available . . . [to him] and the employment implementation procedures during the transition period."  *Id*.  On May 2, 2008, Mr. Bagnall met with Fischer to discuss his return to full-time employment with the City.  (Mr. Bagnall's Depo. at 134-35).

At the time of this meeting, Mr. Bagnall's previous position with the City, Project Engineer/Fleet Manager, was no longer available.  While Mr. Bagnall was on active military leave, his position of Project Engineer/Fleet Manager remained unfilled, and on April 11, 2006, the City created a new position titled Solid Waste Coordinator.  (D.E. No. 40-12, Def. Exh 3 at 4-5).  This new position was created to fulfill a portion of the duties previously provided by the Project Engineer/Fleet Manager.  *Id*. at 5.

At the meeting, Fischer informed Mr. Bagnall that he would be returning as a Project Engineer, a position in the Central Services Department.  (Fischer's Depo. at 35).[3]  In this position, Mr. Bagnall would mainly be dealing with fleet management.  *Id*.  This included managing the City's fleet of vehicles and monitoring the City's contracts with a vehicle maintenance provider.  (D.E. No. 40-12, Def. Exh. 3 at 6).  Such duties were a part of Mr.

_____

[3]Both parties have filed copies of Fischer's deposition. See (D.E. Nos. 40-15 & 49-15).

-3-

Bagnall's former position as Project Engineer/Fleet Manager. *Id.* Specifically, in his prior position, Mr. Bagnall's job functions included "fleet management, solid waste management and construction and other project management assignments." (D.E. No. 49-19, Mr. Bagnall Decl. at ¶ 4); (Mr. Bagnall's Depo. at 26-36). Mr. Bagnall states that his other duties attached to his prior position were not "going to exist anymore" and that he would not be responsible for solid waste and project management. *Id.* at 135-136. In this old position, Mr. Bagnall also supervised at least two city employees. *Id.* at 16, 34-35, 225. In his reemployment position, he had no subordinates. (Mr. Bagnall Decl. at 5).

Mr. Bagnall was also informed that he was not going to get a take-home vehicle anymore. (Mr. Bagnall's Depo. at 135-136). Fischer stated with regard to the take-home vehicle that he was simply passing on a decision made by his superiors. (Mr. Bagnall Depo. at 145-146). It is also undisputed that the position created out of Mr. Bagnall's old position, Solid Waste Coordinator, paid two and a half percent more than the position of Project Engineer offered to Mr. Bagnall. (Fischer's Depo. at 54-55).

Mr. Bagnall testified that the new position offered him as Project Engineer in the Central Services Department was a "career breaker" because the Central Services Department was not a department where you put someone like him with an engineering background. (Mr. Bagnall Depo. at 137-139). Mr. Bagnall testified that the Central Services Department handles "information systems or computer systems, it only does the mailroom, it does some facility management, and it does the fleet management" and none of these functions "apply to an engineer or anybody in the engineering field." *Id.* at 138-139.

At the time of this May 2, 2008 meeting, there were two Project Manager positions

posted on the City's website.  (Mr. Bagnall Depo. at 140-141); (D.E. No. 40-13, Fischer Decl. at ¶¶ 6-7).  Mr. Bagnall discussed these positions with Fischer at the May 2, 2008 meeting and asked that he be considered for these positions.  (Mr. Bagnall Depo. at 140-145).  One position was a Project Manager in the Planning and Development Department and another was a Project Manager in the Utilities Department.  (D.E. No. 40-13, Exh 4., Fischer Decl. at ¶¶ 6-7).  Fischer indicated at the meeting that the Project Manager Position in the Planning and Development Department would probably be eliminated due to budget cuts.  (Mr. Bagnall's Depo. at 143).  This position along with two other positions in that department were in fact eliminated in the 2008-2009 budget "as part of the ongoing annual budget review process and based on the City's need for budget related reductions."  (D.E. No. 40-13, Def. Exh. 4, Fischer Decl. at ¶ 6).  With regard to the Project Manager position in the Utilities Department, Fischer stated at the meeting that Mr. Bagnall was ineligible for this position because it would violate the City's nepotism policy as Mr. Bagnall's wife was working in that department.  (Mr. Bagnall's Depo. at 142-43).  Fischer states that the City has a nepotism policy "which prohibits one family member from supervising another family member."  (D.E. No. 40-13, Def. Exh. 4, Fischer Decl. at ¶ 8).  He states that if Mr. Bagnall had been made Project Manager in the Utilities Department this "would have made him a direct supervisor over his wife, who is a City employee in the position of Secretary II and was assigned to the Engineering Division of the Utilities Department."  *Id.*[4] Fischer also states that this Project Manager position has not been filled and that the City "does not currently intend to fill it."  *Id*. at ¶ 7.

---

[4]In his deposition, Mr. Bagnall states he disagrees that his appointment to this position would have violated the nepotism policy because he does not think he would have been in his wife's direct chain of command.  (Mr. Bagnall Depo. at 142).

At this meeting, Mr. Bagnall also discussed the position of Public Works Director with Fischer.  (Mr. Bagnall Depo. at 143-44).  Fischer indicated to him that he only had the authority to offer Mr. Bagnall the position of Project Engineer and that he was not being considered for other positions.  *Id*.  The City Manager eventually filled this position with another city employee. (D.E. No. 40-13, Def. Exh. 4, Fischer Decl. at ¶¶ 9, 10 , 14-20).  It is "common practice" at the City that "when a director leaves his or her position with the City . . . for one of the highest ranking management level employees from the same department to be appointed as the acting director to fill the vacated director position." *Id*. at ¶ 10.  "It is further common practice at the City . . . for an acting director to be appointed director if he or she satisfactorily fulfills the duties and responsibilities of the director position during the period of time he or she is acting director. *Id*.  On October 6, 2008, the City promoted, Charles Meeks ("Meeks"), then a drainage superintendent, to act as acting public works director.  *Id*. at ¶¶ 16, 17.  On July 27, 2009, the City promoted Meeks to public works director.  *Id*. at ¶ 18.

At this May 2, 2008 meeting Mr. Bagnall and Fischer also discussed Mr. Bagnall's pay during the period he was transitioning from active military duty back to full-time employment with the City.  (Mr. Bagnall's Depo. at 146-149).  After the meeting, Fischer directed payroll to place Mr. Bagnall on full pay status with the City and instructed payroll to use his accrued leave. (D.E. No. 40-12, Def. Exh. 3 at 7); (Fischer's Depo. at 24-25, 38).  Fischer believed this is how Mr. Bagnall wanted the transition period handled.  *Id*.  Mr. Bagnall states that he was improperly forced to use his accrued leave and that he never agreed to using his leave in this manner.   (Mr. Bagnall Depo. at 147-149).  All of the leave Mr. Bagnall was allegedly forced to use was used after May 4, 2008.  *See* (D.E. No. 49-2, Pl.'s Exh. 3 at 2-7).

On May 4, 2008, Mr. Bagnall's period of active military duty ended. (D.E. No. 63, Joint

Pretrial Stip. at ¶ 5(d)).   On July 31, 2008, Mr. Bagnall returned to full-time employment with the

City as a Project Engineer.  *Id*. at ¶ 5(e).   On August 16, 2008, Mr. Bagnall again went on active

military duty.  *Id*. at ¶ 5(f).

### B.    Mrs. Bagnall

Mrs. Bagnall has been employed with the City since 1988.  (D.E. No. 63, Joint Pretrial

Stip. at ¶ 5(g)).  Based on an agreement when Mrs. Bagnall was hired, Mrs. Bagnall was hired as

a Secretary III and later reclassified as a Secretary II.  (Mrs. Bagnall's Depo. at 6).[5]  She, however,

still remained at a Secretary III pay grade.  *Id*.  In 1995, Mrs. Bagnall was transferred to the

Utilities Department as a Secretary II.  *Id*. at 7. She performed secretarial work for the Director of

Engineering regardless of who filled this position until the latter part of 2009. (Mrs. Bagnall's

Depo. at 11); (D.E. No. 40-12, Exh. 3 at 10). When she started in this position, her hours were

from 8:30 a.m. to 4:30 p.m., Monday through Friday.  (Mrs. Bagnall's Depo. at 14).  At some

point, however, the City asked her to change her hours to 8:00 a.m. to 4:00 p.m. to coincide with

the hours the rest of the engineering department worked.  *Id*.

In August 2008, Mrs. Bagnall assisted her husband with his USERRA claim by acting as

a witness before the Department of Labor.  (Mrs. Bagnall's Depo. at 62).

In October 2009, Mrs. Bagnall's duties and responsibilities changed.   (D.E. No. 40-10,

Exh. 2, Mrs. Bagnall Depo. at 19, 30-31).  Mrs. Bagnall's office was moved and her hours were

changed again.  *Id*. at 24.  Mrs. Bagnall had to share her new office and it was half the size of her

---

[5]Both parties have filed copies of Mrs. Bagnall's deposition.  *See* (D.E. No. 40-10, 40-11, & 49-16).

old office.  *Id*. at 19, 27.   She states that she did not have any actual duties that she did some

filing and that she did some proofreading once or twice.  *Id*. at 30-31.  Mrs. Bagnall testifies that

she was told that she needed to attend meetings, but when she showed up at the meetings, she

was told that she was not needed.  *Id*. at 31.

The City has offered evidence that Mrs. Bagnall's job changed because they reorganized

the administrate staff in August of 2009 to better utilize the secretarial staff.  (D.E. No. 40-12,

Exh. 3 at 10).  Mrs. Bagnall states, however, that although she was aware of this reorganization

that no one else's job responsibilities changed as a result of this reorganization.   (Mrs. Bagnall

Depo. at 22-23).

Mrs. Bagnall has also testified that she received at least six verbal reprimands in a one-

month period from September to October 2009.  (Mrs. Bagnall Depo. at 39, 63).

On May 16, 2011, Mrs. Bagnall's duties and her office location changed again. (Mrs.

Bagnall Depo. at 32). Her office was moved to the lobby, and Mrs. Bagnall was asked to act as a

receptionist.  *Id*.  Mrs. Bagnall testified that if her career was a ladder, this change in her position

to a receptionist is at least four steps down.  *Id*. at 68.  Mrs. Bagnall, however, acknowledges that

since her participation in her husband's USERRA claim she has not been suspended from work

nor has she had her pay decreased.  *Id*. at 49.

**C.    This Action**

Plaintiffs filed suit against Defendant on July 26, 2010.  Plaintiffs have alleged that

Defendant violated the USERRA.  Specifically, Mr. Bagnall has alleged that Defendant violated

38 U.S.C. § 4316 by charging Mr. Bagnall with leave time during the period he was in the

uniformed services and by failing to properly reemploy Mr. Bagnall after he returned from

serving in the uniformed services.  Mr. Bagnall also alleges that Defendant violated 38 U.S.C. §

4313 by failing to properly reemploy him.  In addition, he alleges discrimination in violation of

38 U.S.C. § 4311.  Finally, Mr. Bagnall also alleges that Defendant violated 38 U.S.C. § 4318 by

denying him the right to increase his pension benefits and by denying him the right to purchase

pension credits.  Mrs. Bagnall alleges that Defendant improperly retaliated and discriminated

against her in violation of 38 U.S.C. § 4311.[6]

## II.    Legal Standard

A motion for summary judgment should be granted "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law."  Fed. R. Civ. P. 56(c).  By its very terms, this standard provides

that "the mere existence of *some* alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there will be

no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48

(1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).  An

issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find

_____

[6]Plaintiffs filed two separate complaints; however, the Court consolidated their actions. All of the claims described above are encompassed in these complaints.  The Court acknowledges that the complaints are not a model of organization with regard to the separate claims Plaintiffs are asserting.  The Court notes, however, that Defendant never filed a motion for a more definite statement.  The above description of Plaintiffs' claims in this action is taken from Plaintiffs' response to Defendant's motion for summary judgment where Plaintiffs define the issues in this case.  *See* (D.E. No. 49 at 2).  This is the same summary of Plaintiffs' claims in the Joint Pretrial Stipulation.  *See* (D.E. No. 63 at 1-2).  Moreover, both parties have agreed to this "summary of claims" in their submission of proposed jury instructions.  *See* (D.E. No. 69 at 15).

for the non-moving party. *Anderson*, 477 U.S. at 248; *Matsushita Electric Indus. Co.,* 475 U.S. at 586. It is "material" if it might affect the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248. In addition, in considering a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party. *Id.* at 255.

If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment. *See United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F. 2d 1428, 1438 (11th Cir. 1991). The moving party "'must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F. 3d at 1438 (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.3d 1472, 1477 (11th Cir. 1991)). *See also* Fed. R. Civ. P. 56(e).

In contrast, if the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim or affirmative defense. *Celotex*, 477 U.S. at 324. When the non-moving party bears the burden of proof, the moving party does not have to "support its motion with affidavits or other similar material *negating* the opponent's claim." *Id.* at 323 (emphasis in original). The moving party may discharge its burden

-10-

in this situation by showing the Court that "there is an absence of evidence to support the

nonmoving party's case." *Id*. at 324.  Once the moving party discharges its initial burden, a non-

moving party who bears the burden of proof must "go beyond the pleadings and by [its] own

affidavits or by the 'depositions, answers to interrogatories, and admissions on file' designate

'specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting Fed. R. Civ. P. 56(e)).

A non-moving party "may not rest upon the mere allegations or denials of the adverse party's

pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial."

Fed. R. Civ. P. 56(e).

**III.   Analysis**

Defendant has moved for summary judgment, arguing that summary judgment is

appropriate on Mr. Bagnall's claims relating to his alleged required use of his paid leave.  The City

also argues that summary judgment is appropriate on Mr. Bagnall's claims under sections 4313

and 4316 that he was not properly reemployed because Mr. Bagnall was in fact promptly

reemployed in a position of equivalent status, salary and benefits to the position he would have

held had he not left for military duty.  In addition, the City argues that it is entitled to judgment as

a matter of law on Mr. Bagnall's claims of discrimination under section 4311 because Mr. Bagnall

cannot identify any adverse employment benefit denied by the City and because Mr. Bagnall

cannot make an initial showing that his military status was a motivating factor in any alleged

denials.  Defendant also argues that it is entitled to summary judgment on the claims for

discrimination under 4311 asserted by Mrs. Bagnall because she has been unable to identify any

adverse employment actions since she participated in Mr. Bagnall's USERRA claim, because any

alleged adverse employment actions were simply part of a larger reorganization of the secretarial

staff in the utilities department that applied equally to all secretaries, and because any alleged

adverse employment actions were unrelated to Mrs. Bagnell's participation in Mr. Bagnall's

USERRA claim.[7]   The Court grants Defendant's motion as to Mr. Bagnall's claims relating to paid

leave and discrimination and as to Mrs. Bagnall's claims of discrimination.  Defendant's motion is

denied in all other respects.

### A.       Mr. Bagnall's Claims Relating to Use of Paid Leave

First, Defendant has moved for summary judgment, arguing that summary judgment is

appropriate on Mr. Bagnall's claims relating to his alleged required use of his paid leave.

---

[7]Defendant has also moved for summary judgment on Mr. Bagnall's claim that he was improperly denied a promotion.  The Court, however, disagrees that this is actually Mr. Bagnall's claim; rather, Mr. Bagnall claims that he was not properly reemployed under sections 4313 and 4316.  The Court agrees that Mr. Bagnall discusses other positions that were available at the time he was reemployed and such positions may be relevant to his argument that he was not properly reemployed in that he may argue that these positions were available and more appropriate for him to be placed in.  Mr. Bagnall, however, does not make a simple claim that he was not promoted.  Thus, the Court does not discuss Defendant's arguments regarding any claim relating to a denied promotion.  If, however, at trial Plaintiff Mr. Bagnall attempts to assert a simple claim that he was denied a promotion, Defendant may make an appropriate motion.

Defendant also did not move for summary judgment on Mr. Bagnall's claims relating to his pension benefits under section 4318.  Defendant did argue in its motion for summary judgment that with regard to Mr. Bagnall's 401(a) account that it has remedied any deficiencies in the account "by making lump sum payments into the account including any interest which would have been earned." (D.E. No. 38 at 8).  Thus, Defendant argues that "even if the Court where [sic] to find that these past alleged deficiencies constituted a USERRA violation there remains no relief for the Court to grant because the City has remedied any issues" *Id*.  The Court, however, disagrees that Defendant has demonstrated that summary judgment is appropriate on this issue.  Even if, since the filing of this lawsuit, the City has put certain monies into Plaintiff's 401(a) account, this does not necessarily mean that Mr. Bagnall no longer has a claim.  If a violation of the USERRA occurred, Defendant may also be entitled to liquidated damages. *See* 38 U.S.C. § 4323(d)(1)(C); (D.E. No.1 in Case No. 10-cv-61298-Martinez, Mr. Bagnall Compl. at ¶ 27) (claiming that Mr. Bagnall is entitled to liquidated damages).  The Court does not consider or address any new arguments made by Defendant regarding this claim in its reply brief. *See Sharpe v. Global Sec. Intern*., 766 F. Supp. 2d 1272, 1294 n.26 (S.D. Ala. 2011) (collecting cases stating that it is inappropriate to raise new issues and arguments in a reply brief and stating that courts generally do not consider these arguments).

Defendant argues that summary judgment is appropriate because the USERRA does not prohibit the use of accrued leave and because the facts in this case do not give rise to a USERRA violation. Plaintiffs have responded that requiring Mr. Bagnall to use his paid leave was a violation of 38 U.S.C. § 4316(d) and that there is a genuine issue of material fact regarding this issue.[8]

> Section 4316(d) provides:
>
> (d) Any person whose employment with an employer is interrupted by a period of service in the uniformed services shall be permitted, upon request of that person, to use during such period of service any vacation, annual, or similar leave with pay accrued by the person before the commencement of such service. No employer may require any such person to use vacation, annual, or similar leave during such period of service.

Thus, under section 4316(d), an employer may not require an employee in the uniformed services to use their leave "during such period of service."  The USERRA defines "service in the uniformed services" as

> the performance of duty on a voluntary or involuntary basis in a uniformed service under competent authority and includes active duty, active duty for training, initial active duty for training, inactive duty training, full-time National Guard duty, a period for which a person is absent from a position of employment for the purpose of an examination to determine the fitness of the person to perform any such duty, and a period for which a person is absent from employment for the purpose of performing funeral honors . . . .

38 U.S.C. § 4303(13).  It is undisputed that on May 4, 2008, Mr. Bagnall's period of active military duty ended. (D.E. No. 63, Joint Pretrial Stip. at ¶ 5(d)).  All of the leave Mr. Bagnall was allegedly forced to use was used after May 4, 2008.  *See* (D.E. No. 49-2, Pl.'s Exh. 3 at 2-7). There is no evidence that Mr. Bagnall was performing any other service in the uniformed services, as that term is defined above, during the time he was allegedly forced to use his leave.

---

[8]Plaintiffs actually cite section 4316(b), but it is clear that Plaintiff meant subsection(d) as Plaintiff quotes subsection (d).  See (D.E. No. 49 at 7).

Accordingly, Mr. Bagnall is not protected under section 4316(d), and summary judgment is granted in Defendant's favor on this claim.

### B.   Mr. Bagnall's Reemployment Claims under Sections 4313 and 4316

Next, Defendant has sought summary judgment on Mr. Bagnall's claims that he was not properly reemployed under sections 4313 and 4316.  Section 4312 of the USERRA provides that "any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits" if certain conditions are met.  38 U.S.C. § 4312(a).  Defendant has not disputed that these conditions were met.  Section 4313 provides that "a person entitled to reemployment under section 4312, upon completion of a period of service in the uniformed services, shall be promptly reemployed in a position of employment . . . ."  38 U.S.C. § 4313(a). Section 4313(a)(2) provides in relevant part that "a person whose period of service in the uniformed service was for more than 90 days" shall be reemployed  "in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service, or a position of like seniority, status and pay, the duties of which the person is qualified to perform."  38 U.S.C. § 4313(a)(2)(A).  Furthermore, section 4316 provides that

> [a] person who is reemployed under this chapter is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed.

38 U.S.C. § 4316(a).  This is often referred to as the "escalator principle," which provides that a returning service member does not step back on the seniority escalator at the point he stepped off.

-14-

He steps back on at the precise point he would have occupied had he kept his position continuously." *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 284-85 (1946).

Mr. Bagnall claims that Defendant violated the requirements of 4313 and 4316 because the position he was placed in upon his return, Project Engineer, was not equivalent to his prior employment as Project Engineer/ Fleet Manager if he had remained continuously employed. Defendant has moved for summary judgment on this issue arguing there are no genuine issues of material fact and that Mr. Bagnall's prior position and his reemployment position were equivalent. The regulations require an employer to consider seven factors in determining the status of an employee's prior position if he or she had remained continuously employed: (1) the employee's opportunities for advancement, (2) working conditions, (3) job location, (4) shift assignment, (5) rank, (6) responsibility, and (7) geographical location. 20 C.F.R. §§ 1002.193, 1002.194. Courts have also considered these factors in comparing the status of a prior position and a reemployment position. *See Fannin v. United Space Alliance*, No. 6:07-cv-1315-Orl-DAB, 2009 WL 928302, at *6 (M.D. Fla. April 3, 2009) (applying six of these factors to determine whether a position offered to a returning service member was of like status to his prior position and finding it was not); *Long v. Ellis Environmental Group, LC*, No. 3:05cv227 MCR/EMT, 2007 WL 1020005, at *6 (N.D. Fla. March 30, 2007) (applying six of these factors and determining that a reemployment position was of like status or possibly higher in status than a returning service member's prior employment). Here, the Court applies these factors in determining whether the position of Project Engineer was of like status to Mr. Bagnall's prior position as Project Engineer/Fleet Manager if he had remained continuously employed and finds that Mr. Bagnall has submitted sufficient evidence in response to the motion for summary judgment that such positions were not

equivalent.

The Court acknowledges that with regard to a number of the factors, such as the job location, the shift assignment, the working conditions, and the geographical location, the positions appear to be in equipoise or the Court lacks sufficient information regarding such factors.  With regard to the other factors, however, Plaintiff Mr. Bagnall has submitted evidence that the positions were not equivalent.  First, with regard to the employee's opportunities for advancement, Mr. Bagnall testified in his deposition that the new position offered him as Project Engineer in the Central Services Department was a "career breaker" because the Central Services Department was not a department where you put someone like him with an engineering background.  (D.E. No. 49-9, Mr. Bagnall Depo. at 137-139).  Mr. Bagnall testified that the Central Services Department handles "information systems or computer systems, it only does the mailroom, it does some facility management, and it does the fleet management" and none of these functions "apply to an engineer or anybody in the engineering field."  *Id*. at 138-139.  Thus, Mr. Bagnall's opportunities for advancement from this position as opposed to his prior position which was in the Planning and Development Department, where he states there were other engineers working and jobs for engineers, was necessarily more limited.  *Id*. at 137.  The City disputes Mr. Bagnall's ability to testify as to his opportunities for advancement or his status in general regarding his new position as they state that he only reported for work for four days in this new position.  *See* (D.E. No. 51 at 5).  This, however, is a matter that goes to the weight of Mr. Bagnall's testimony and not its admissibility.

Mr. Bagnall has also presented evidence that there were differences in the two positions with regard to rank and responsibility.  Specifically, in his prior position, Mr. Bagnall's job

functions included "fleet management, solid waste management and construction and other

project management assignments." (D.E. No. 49-19, Mr. Bagnall Decl. at 4); (D.E. No. 49-9, Mr.

Bagnall Depo. At 26-36).  In this position, Mr. Bagnall also supervised at least two city

employees. (D.E. No. 49-9 at 16,  34-35, 225). In his reemployment position, he had no

subordinates. (D.E. No. 49-19, Mr. Bagnall Decl. at 5).  There was no job description for his new

position but the primary duty was fleet management.  (D.E. No. 49-9, Mr. Bagnall Depo. at 151).

He states that his other duties attached to his prior position were not "going to exist anymore." *Id*.

at 136.  It is also clear that Mr. Bagnall would no longer be responsible for solid waste

management as another position had been created with regard to this duty.  *Id*. at 152-53.  It is also

undisputed that the position created out of Mr. Bagnall's old position, Solid Waste Coordinator,

paid two and a half percent more than the position of Project Engineer offered to Mr. Bagnall.

(Fischer's Depo. at 54-55). Thus, the Court finds that Mr. Bagnall has presented sufficient

evidence to defeat Defendant's motion for summary judgment on this claim.  *See Duarte v.*

*Agilent Technologies, Inc.*, 366 F. Supp. 2d 1039, 1045-1046 (D. Colo. 2005) (finding that

although a returning service member's "title, pay, and benefits upon his return from active duty . .

. were the same as they had been when he was called-up . . . the duties of his job . . . were

significantly different" and concluding that the service member's new position was of a

diminished status and finding a violation of section 4313 of the USERRA).[9]

---

[9]Defendant has also argued that Plaintiff Mr. Bagnall lacks standing to assert this
reemployment claim because there is no relief for this Court to award.  Defendant argues that
there are no lost benefits or wages associated with this claim and that the Court cannot order it to
reinstate Mr. Bagnall because Mr. Bagnall is on active military duty and intends to be for at least
another year.  The Court acknowledges that Mr. Bagnall has also filed a Declaration with the
Court stating that he does "not work at the City of Sunrise at present." (D.E. No. 49-9, Exh. 18,
Mr. Bagnall Decl. at ¶ 1).  The City, however, disputes this fact in reliance on Mr. Bagnall's

### C.    Discrimination Claims Under 4311

Next, the City has also sought summary judgment on Mr. Bagnall and Mrs. Bagnall's

claims of discrimination under section 4311 of the USERRA.  Section 4311 provides in relevant

part that

> (a) A person who is a member of, applies to be a member of, performs, has
> performed, applies to perform, or has an obligation to perform service in a
> uniformed service shall not be denied initial employment, reemployment, retention
> in employment, promotion, or any benefit of employment by an employer on the
> basis of that membership, application for membership, performance of service,
> application for service, or obligation.

> (b) An employer may not discriminate in employment against or take any adverse
> employment action against any person because such person (1) has taken an action
> to enforce a protection afforded any person under this chapter, (2) has testified or
> otherwise made a statement in or in connection with any proceeding under this
> chapter, (3) has assisted or otherwise participated in an investigation under this
> chapter, or (4) has exercised a right provided for in this chapter. The prohibition in
> this subsection shall apply with respect to a person regardless of whether that
> person has performed service in the uniformed services.

38 U.S.C. §§ 4311(a) & (b).  In order to establish a prima facie case of discrimination, Plaintiffs

must show with regard to Mr. Bagnall that he was denied a benefit of employment and that his

protected status was a "motivating factor" in the denial.  *Coffman v. Chugach Support Servs*., Inc.,

---

deposition. *See* (D.E. No. 52 at ¶ 3); (D.E. No. 49-9, Mr. Bagnall Depo. at ¶¶ 5-6).  It is unclear
to the Court if Mr. Bagnall is simply on leave from the City or if he has quit.  Thus, there is a
dispute of fact regarding this issue.
    The "USERRA provides that a court may award three kinds of relief: (1) an injunction
requiring an employer to comply with USERRA's provisions; (2) compensation for lost wages or
benefits suffered by reason of the employer's failure to comply with USERRA, and (3) liquidated
damages in an amount equal to lost wages or benefits if the employer's failure to comply with
USERRA was willful." *Dees v. Hyundai Motor Mfg. Alabama, LLC*, 368 Fed. Appx. 49, 52-53
(11th Cir. 2010).  If Mr. Bagnall is only on military leave, the Court can award relief.  The Court
can still enter an injunction that the City comply with USERRA's provisions even if Mr. Bagnall
does not return from leave for a year.  In addition, it is unclear but Mr. Bagnall also may be
entitled to lost wages as it is not clear from the record what the salary of an equivalent position
was or should be.

-18-

411 F.3d 1231, 1238 (11th Cir. 2005).  With regard to Mrs. Bagnall, Plaintiffs must show that

Mrs. Bagnall's involvement in Mr. Bagnall's USERRA claim was a motivating factor in an

adverse employment action taken by the City against her.  *Id.*

  "A motivating factor does not mean that it had to be the sole cause of the employment

action." *Coffman*, 411 F. 3d at 1238.  It is enough if  "it is one of the factors that a truthful

employer would list if asked for the reasons for its decision." *Id.* (internal quotations marks

omitted).  The Eleventh Circuit has stated that

> [t]he court can infer discriminatory motivation under the USERRA from a variety of
> considerations, such as: "proximity in time between the employee's military activity and
> the adverse employment action, inconsistencies between the proffered reason and other
> actions of the employer, an employer's expressed hostility towards members protected by
> the statute together with knowledge of the employee's military activity, and disparate
> treatment of certain employees compared to other employees with similar work records or
> offenses."

*Coffman*, 411 F.3d at 1238 (quoting *Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1014 (Fed.Cir.

2001)).

  After the employee meets his or her burden and establishes a prima facie case of

discrimination, "'the burden shifts to the employer to prove the affirmative defense that legitimate

reasons, standing alone, would have induced the employer to take the same adverse action.'" *Id.* at

1238-39.  "'Thus in USERRA actions there must be an initial showing by the employee that

military status was at least a motivating or substantial factor in the agency action, upon which the

agency must prove, by a preponderance of evidence, that the action would have been taken despite

the protected status.'" *Id.* at 1239.   Here, the Court finds summary judgment in Defendant's favor

is appropriate on both Plaintiffs' claims of discrimination.

### 1.    Mr. Bagnall

Mr. Bagnall argues that Defendant discriminated against him in violation of section 4311 when Defendant denied him a take-home vehicle as a benefit of employment after his reemployment.[10] As discussed above, to prove his prima facie case of discrimination under section 4311, Mr. Bagnall must show that his protected status as a uniformed serviceman was a motivating factor in the City's failure to allow him a take-home vehicle upon his reemployment. Mr. Bagnall attempts to prove this by arguing that the City offered inconsistent reasons for the denial of a take-home vehicle and by pointing to other employees who were able to retain their take-home vehicle.  The Court finds, however, that Mr. Bagnall has failed to demonstrate or even create a genuine issue of material fact with regard to his prima facie case.  The Court also finds that Defendant has met its burden of providing an independent reason for their denial of the take-home vehicle.

First, the Court finds as a matter of law that providing an employee with a take-home vehicle can be a benefit of employment as defined under section 4311(a).[11]  The term "benefit of

---

[10]Mr. Bagnall does not argue that the City discriminated against him under the USERRA for any other reasons.  The Court is not required to "scour the record" looking for evidence to support Mr. Bagnall's claims.  *Powell v. Carey Intern., Inc.*, 483 F. Supp. 2d 1168, 1185 (S.D. Fla. 2007) (citing *Coggin v. Longview Indep. Sch. Dist.*, 337 F.3d 459, 469 (5th Cir. 2003)).

[11]The Court acknowledges that Mr. Bagnall has testified and Plaintiffs argue in their response that the take-home vehicle was originally provided as part of a 1995 Settlement Agreement entered into between the parties regarding another action. (D.E. No. 49 at 15-16); *see also* (Mr. Bagnall's Depo. at 204-205).  Defendant disputes that this benefit was provided as part of the 1995 agreement and references the plain language of the agreement, which in fact does not specifically reference a take-home vehicle.  *See* (D.E. No. 40-9, Exhs. 23 at ¶ 13 to Mr. Bagnall Depo); *see also* (D.E. No. 40-9, Exh. 24 to Mr. Bagnall Depo).  The Court, however, finds this issue is irrelevant.  There are no claims in this action for breach of contract or more specifically for breach of the prior settlement agreement.

employment" is defined in the USERRA as

> any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.

38 U.S.C. § 4303(2).  Providing someone with a take-home vehicle is a privilege, an advantage, and a profit as the employee who has the use of such a vehicle may forego purchasing his own vehicle or at least save some wear and tear on his own vehicle.  Here, it is undisputed that the new position offered to Mr. Bagnall when he was rehired did not include the use of a take-home vehicle.  (Mr. Bagnall's Depo. at 135-36).

The Court, however, finds Mr. Bagnall's arguments that such a denial was discriminatory because inconsistent reasons were given for the denial and other employees were treated differently are without merit. First, the record does not support Plaintiff's argument that inconsistent reasons were given for the denial of a take-home vehicle.  Plaintiff relies on Mr. Bagnall's testimony regarding the reason given by Fischer at the May 2, 2008 meeting for the denial of the take-home vehicle.  Mr. Bagnall, however, testifies only that Fischer stated that he was simply passing on a decision made by his superiors.  (Mr. Bagnall Depo. at 145-146).  The entire exchange in Mr. Bagnall's deposition went as follows:

> Q.    Okay Did Mr. Fischer tell you why you wouldn't be getting a take-home vehicle?
>
> A.    He indicated that again, that all of this was--this decision to put me in this position was done at a higher level and he was just conveying, he was a messenger, and that this is-all of this had been reviewed, and I assume that that means since the next higher person is the city manager, it was reviewed by the city manager, I'm sure

-21-

> that the counsel was involved to indicate they did not need to comply with the
> settlement agreement.

*Id*. Thus, in Mr. Bagnall's retelling of this conversation, Fischer does not specify a reason for the

denial of the take-home vehicle. Accordingly, it cannot be said that this testimony demonstrates

any sort of inconsistency. Mr. Bagnall also relies on his testimony regarding a July 31, 2008

meeting with the personnel director and his new supervisor wherein Mr. Bagnall states in relevant

part that "[t[he conversation was pretty blunt. Both of them told me I was not getting a take-home

vehicle. . . ." (Mr. Bagnall Depo. at 186). This, however, again shows only that he was denied the

vehicle and doesn't provide any reason as to why. Thus, this also does not demonstrate any

inconsistency.

The Court also finds that Mr. Bagnall has not demonstrated that other employees similar to

him were given take-home vehicles. Mr. Bagnall relies on an unauthenticated memorandum dated

December 18, 2009, purporting to be from Hector Castro, Director of Utilities to Payroll. (D.E.

No. 49-13, Exh. 12). In this memorandum there are five columns. One column lists the

employee's name while another lists the date a vehicle was issued. The next column provides a

brief description of the vehicle (i.e. Jeep or Ford 150). Another column lists the vehicle number,

and the last column states "[i]f Exempt Reply Yes." *Id*. It is unclear what is meant by the last

column. It may refer to whether the employee is exempt from the provisions of the Fair Labor

Standard Act.[12] It is unclear. Even if the Court were to consider this memorandum as evidence, it

is vague, and it is impossible to ascertain if the employees who do have a vehicle are similarly

---

[12]The Court notes that as a matter of law there are a number of different reasons that an
employee may be considered exempt under the Fair Labor Standards Act.

situated to Mr. Bagnall.[13]  *See Dominguez v. Miami-Dade County*, 416 Fed. Appx. 884, 885 (11th Cir. 2011) (finding in reviewing a district court's entry of summary judgment on a plaintiff's claims, including those under USERRA, that the plaintiff "has not met his burden showing that there any similarly-situated employees, not in the military, who received more favorable treatment than he did regarding the discipline imposed").  Moreover, the memorandum is dated December 18, 2009 almost a year after the relevant time period in this case.  Thus, this evidence also does not establish a genuine issue of material fact.

Even if Mr. Bagnall had demonstrated a prima facie case, the City has presented evidence that a take-home vehicle would not have been provided to Mr. Bagnall regardless of his protected status because the privilege of a take-home vehicle was withdrawn from several employees in the City's attempts to reduce its budget.  (D.E. No. 40-12, Def. Exh. 3 at 6); (Fischer's Depo. at 77-79).  Plaintiff has not pointed to any evidence to dispute this reason given by the City for not offering Mr. Bagnall a take-home vehicle.  Accordingly, for both of these reasons, the Court grants summary judgment in Defendant's favor on Mr. Bagnall's claims of discrimination under section 4311.

### 2.    Mrs. Bagnall

To demonstrate a prima facie case of discrimination Mrs. Bagnall must show that her involvement in Mr. Bagnall's USERRA claim was a motivating factor in an adverse employment action taken by the City against her.  Mrs. Bagnall argues that Defendant discriminated against her

---

[13]Mr. Bagnall also references the deposition testimony of another employee, Mr. Moeller. In this testimony, Mr. Moeller acknowledges that he has a take-home vehicle. (D.E. No. 49-17, Excerpts of Moeller's Depo. at 50). This, however, is just one employee, and the Court lacks sufficient information regarding this employee to determine if he is similarly situated to Mr. Bagnall.

in violation of section 4311 when she was subjected to six reprimands at work, when she was stripped of all of her duties as a Secretary II and not assigned any significant task, and then when all of her duties were completely removed and she was assigned to a reception desk "with no opportunity for advancement or professional work." (D.E. No. 49 at 17). Mrs. Bagnall argues that the proximity in time between her serving as a witness before the National Labor Relations Board for her husband's USERRA claim in August 2008 and these incidents is circumstantial evidence that her participation in Mr. Bagnall's USERRA claim was a motivating factor in the alleged discrimination. This Court, however, finds that Plaintiff has not demonstrated that her participation in Mr. Bagnall's USERRA claim was a motivating factor in the alleged adverse employment actions because there is no temporal proximity between her protected activity and the alleged harms.[14]

In August 2008, Mrs. Bagnall assisted her husband with his USERRA claim by acting as a witness before the Department of Labor. (Mrs. Bagnall's Depo. at 62). All of the alleged adverse employment actions occurred over a year after this protected activity. From September to October 2009, Mrs. Bagnall testified that she received at least six reprimands. *Id*. at 39, 63. In October 2009, Mrs. Bagnall testified that her duties and responsibilities changed significantly. *Id*. at 19, 30-31.[15] Finally on May 16, 2011 Mrs. Bagnall's duties changed again, and she was asked to act

_____

[14]The Court finds it unnecessary to address Defendant's other arguments as to why this claim fails.

[15]She states that she did not have any actual duties that she did some filing and that she did some proofreading once or twice. (Mrs. Bagnall's Depo. at 30-31). Mrs. Bagnall testifies that she was told that she needed to attend meetings, but when she showed up at the meetings, she was told that she was not needed. *Id*. at 31.

as a receptionist.  *Id*. at 32.  The Eleventh Circuit has stated in the context of Title VII that where a plaintiff relies on temporal proximity between the protected activity and the adverse employment action to show causation, this temporal proximity must be "very close."  *Thomas v. Cooper Lighting, Inc.*, 506 F. 3d 1361, 1364 (11th Cir. 2007) (internal quotations omitted).  The Eleventh Circuit has stated that "[a] three to four month disparity between the statutorily protected expression and the adverse employment action is not enough" and found that "in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law."  *Id*.  The Court finds this logic is equally applicable where a plaintiff relies on temporal proximity as the sole evidence to show that her protected activity under the USERRA was a motivating factor for the adverse employment actions.  Here, Plaintiff Mrs. Bagnall's alleged adverse employment actions all occurred over a year after her protected activity.  The last adverse employment action cited by Plaintiff, her move to the reception desk, occurred almost three years after the protected activity occurred.  Thus, the Court finds Plaintiff has not demonstrated her prima facie case or even created a genuine issue of material fact with regard to her prima facie case.[16]  Accordingly, summary judgment is also appropriate on Mrs. Bagnall's claim for discrimination.  Therefore, it is hereby:

**ORDERED AND ADJUDGED** that

Defendant City of Sunrise's Motion for Summary Judgment (D.E. No. 38) is **GRANTED in part** and **DENIED in part**.  The motion is granted as to Mr. Bagnall's claims relating to paid

---

[16]Mrs. Bagnall did not cite any other ways in which she could demonstrate her prima facie case other than temporal proximity.

leave and discrimination and as to Mrs. Bagnall's claims of discrimination.[17]  Defendant's motion

is denied in all other respects.  A final judgment shall be entered by separate order.

DONE AND ORDERED in Chambers at Miami, Florida, this 24 day of August, 2011.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge McAliley
All Counsel of Record

---

[17]Mrs. Bagnall only claimed discrimination and thus none of her claims proceed to trial.